We'll hear argument next in Case 18-916, Thryv, Inc. v. Click-To-Call Technologies. Mr. Charnas. Mr. Chief Justice, and may it please the Court, the text of the America Invents Act, the statutory history, the statute's policy goals, and this Court's decision in Quozo all confirm that Section 314d precludes judicial review of the Director's time-barred dissermination under Section 314b. I begin with the text of the statute. Congress drafted the appeal bar to apply to, quote, the determination whether to institute an interparties review under this section. Congress could have written Section 314d to review only the determination whether there was a reasonable likelihood that the petitioner would prevail. But Congress wrote the provision more broadly to apply to the institution decision as a whole. Further, Section 314d itself instructs the Director to look beyond that section in making the institution determination in at least two ways. First, Subsection b instructs the Director to, quote, determine whether to institute an interparties review under this chapter. And more expressly, Subsection a tells the Director to consider the patent owner's response in determining whether to institute review, and Section 313 says the patent owner in that response can present reasons explaining why the petition fails to meet any requirements of the chapter. In other words, the text of the statute makes clear that the institution determination occurs under Section 314 based on the prerequisites in the entire chapter. And because Subsection d provides the institution determination cannot be judicially reviewed, the agency's application of those prerequisites located elsewhere in the chapter cannot be appealed, including Section 315b. Now, the statutory history confirms this reading. Congress knew how to limit the appeal bar just to the preliminary patentability determination. That is, after all, how it wrote the similar, the analogous limits on judicial review for ex parte reexaminations in former Section 312 and interparties reexaminations in Section 313. The interparties reexamination statute, former 312, although now repealed, is particularly instructive. Like with IPRs, Congress included several prerequisites to institution in former Section 311. But when it wrote the appeal bar, it wrote it narrowly focused on, quote, the determination under Subsection a. Subsection a contained the preliminary patentability standard, which is a substantial new question of patentability. That, by writing it that way, Congress excluded from the appeal bar the agency's determination of the statutory prerequisites. With the American Vents Act, however, Congress broadened the appeal bar in Section 314d to apply to the institution decision as a whole. And this deliberate drafting decision essentially refutes Respondent's reading of the statute. This reading, our reading of the statute, is also confirmed by this Court's decision in Quoso. Now, Quoso dealt with a prerequisite to institution that was not in 314a. It was in 312a.3, the particularity requirement. Nonetheless, this Court held that it was subject to the appeal of the board's assessment of the particularity requirement was subject to the appeal bar in Section 314d. And it's important to focus on what the Court explained, why the Court explained it was subject to that. The Court said the appeal bar applies to two different things. It applies to the preliminary patentability determination in 314a, that is, the board's assessment about whether it was reasonably likely that the Petitioner would prevail. And it also applied, this Court said in Quoso, to statutes that are closely related to the institution decision. And in our view, Section 315b is by definition closely related to the institution decision. After all, 315b begins with the words, an inter partes review may not be instituted if. Quoso had a part that, of course, responded to concerns that have been raised, I think in the dissent, and says we, our interpretation does not enable the agency to act outside its statutory limits. For example, such shenanigans may be properly reviewable and focused really on the narrow issue before it. So how do we take into account that language from the decision? Right. Well, the question is, what the Court explained in Quoso was, for example, if the board, they validated a patent on grounds that were beyond the scope of an IPR, that that would be a shenanigan that could be reviewed. That's a merits decision. That's a step two decision. That's not an institution decision. And I think it's important to focus on the fact, on really the limited nature of Section 315b within the statutory scheme. 315b is not a merits determination. 315b is not a statute of repose, as it's traditionally understood. Instead, it's a limited forum selection provision. And it's a limited forum selection provision in two different ways. But, Mr. Czernas, let's, just to follow up on this, let's just hypothesize that someone has tried to undo this patent four times, or maybe more, in a court of law, failed for various reasons every single time, and then comes to the director of patents, who has a political mission, perhaps, to kill patents, let's just say. And it is clearly time-barred under the statute. Let's just hypothesize that. And yet, the director goes ahead and does it anyway. Under your submission to the Court, I believe you're saying that is a shenanigan this Court cannot review. Well, I think it would be — it's correct that our submission is that it's not reviewable. The time-bar is not reviewable. Do you disagree that it's a shenanigan? Well, I'm not sure exactly what the Court meant by shenanigan. As we pointed out in our brief, shenanigan, I think it was a good-faith application by the board of the legal standards. I'm asking you in my hypothesis, all right? Hypothesis, there's no good faith, okay? The director of patent has a political desire, for whatever reason, to destroy this patent and many others. Just hypothesize that, okay? In your circumstance, you're telling the Court there's no review of that decision, I believe, or maybe it's not a shenanigan even in your view, perhaps. Well, I think there's no review under 314d. It may be that it's an appropriate case for mandamus relief if the circumstances are as egregious as you suggest in your hypothetical. How would it be if it's not — if it's not reviewable under 314b? Well, mandamus is only available when there's no appellate review to begin with. So the fact that there's no appellate review — So we're going to just channel all these cases to mandamus? Is that the upshot of your position? No, because mandamus is a rare relief. I mean, it would only be reserved for really egregious circumstances like your hypothetical. The mine run cases where the Board applies 315b and makes a determination would not be appropriate for mandamus relief. And part of the reason is, as I was alluding to, is that 315b is the institution decision is not reviewable at all, how would it be mandamusable? Well, if it's an egregious decision, and where … So it's not reviewable unless it's egregious. Well, mandamus is only available in circumstances where there's no review. That's the first step, first step for the mandamus. If there's — if you can review it on appeal, then mandamus is not available. So I don't think that excludes mandamus. I think in the circumstance where the director says, for example, yeah, we think this is time barred, but I want to kill this patent for political reasons, that may be egregious enough. And the Federal Circuit has indicated in a couple of different cases that mandamus may be appropriate in truly egregious cases in the context of the case. You agree with those decisions? Yes. Okay. If that's the case, what does the work of the presumption of judicial review do here, in your view? Well, I don't … We don't dispute that there is a presumption of judicial review. Okay. You agree with the government in the last case that it's based on the separation of powers, and it is designed to ensure people that they are not subject to what are called whimsical executive decisions? In general terms, yes. But I think it's important to recognize, as this Court held in Dalton v. Specter, that separation of powers requires this Court to respect Congress's withdrawal of jurisdiction to the courts as much as implying jurisdiction where it should exist. Here, it would be one thing. It would be a different case, for example, like in the first case, where the ultimate This is just a – this is a form selection provision. The question is, are these parties going to fight in the agency, or are they going to fight in court? It doesn't restrict the time-barred IPR Petitioner's ability to challenge the validity of the patent in court, and it doesn't restrict the ability of the director of the PTO to institute other mechanisms that are available. Ex parte reexamination, for example, under Section 303, to invalidate this patent. So it's – Ginsburg What do you do with the sentence in this Court's SAS decision that says 314D precludes judicial review only of the Board's initial determination under 314A that there is reasonable likelihood that the claims are unpatentable? Yes. Justice Ginsburg, we think that that's not a complete description of Quozo, and the reason is because SAS Institute, the rationale for why there was judicial review was completely different. SAS held that Section 318 prohibited the agency's practice of only reviewing some of the challenge claims and not all of the challenge claims. Section 318 is a step-two merits statute, and – Ginsburg This sentence sounds like it's saying what 314D precludes, and it does say only that the Board's initial determination under 314A. I agree that it sounds that way. We don't think that's a complete summary of what Quozo said. Ginsburg Do you think that that was just a wrong sentence? I wouldn't say it was wrong. What I'd say is that the Court had no need to describe Quozo more broadly, analyzing exactly what institution stage step-one decisions would be precluded from review, because that was not the factual circumstance of SAS. SAS clearly involved the question of whether the final written decision addressed all the claims that were being challenged. So that's the reason why reviewability was allowed in 314. I think you are saying it's wrong, to pick up on Justice Ginsburg's question, at least to use the word only. I think it's not a complete description. I think that's – let me – Justice Scalia, I think it's not – that's not the only basis that this Court explained in Quozo. I think that's a fair point. If we took it, that's – I'm sorry. Thank you, counsel. Thank you. Mr. Ellis. Mr. Chief Justice, and may it please the Court. Congress established in our party's review as a quick and efficient means for the It proceeds in two steps, institution and trial. To prevent duplicative proceedings between the agency and the courts, Congress established a series of prerequisites to the institution of such a trial, but to maintain the efficiency of the process and ultimately to preserve the resources of the agency and the parties, it focused judicial review on the issue that matters most to the system as a whole, the final patentability analysis in the final written decision after trial. Respondents' argument to the contrary is inconsistent with the plain text of 314d, with the structure of the Act, with this Court's decision in Quozo, and ultimately we give 314d the exact same meaning as its direct predecessor in section – former section 312, despite Congress's use of markedly different language. Section 314d on its face precludes judicial review of the determination whether to institute interparty's review, because Respondent's challenge in this case is directly directed solely at that determination. The Federal Circuit lacked authority to review it. I think you have – I want to pose for you the same question that Mr. Charnas was asked about the separation of powers. As I understand his answer, at least part of it is more or less that this is small potatoes. It's just about timing for the institution of the matter and that the basic issue of the patent validity is something you're going to get to. You have a number of avenues to get to it. Is that your – do you agree with that view? I do largely agree with that view. I think that the presumption of judicial reviewability is primarily about congressional intent. And so I do think that in a case where you have an express bar on judicial review, you've got a long way down the road. That doesn't mean that it drops out entirely, but I also think it's important in this case, and it would mitigate any separation of powers concerns, that you do get review at the end of the day of the patentability analysis, the issue that matters most to the system and to the parties themselves. And I do think it's important to think about the fact that Section 315B isn't a limit at all on the director's ability to revisit the patentability of any particular patent. And so, Justice Gorsuch, when you offered a hypothetical about the director who was just bent on reviewing the patentability of a particular patent, I think one thing you should address that concern is that you're going to get review, judicial review of the patentability. That is to say whether the director's decision is correct or not. But you're not going to get review, though, of the question of whether the director could institute that proceeding in the first place, are you? Especially after, I mean, as I understand it, this patent has been challenged four times before, unsuccessfully. And here it was challenged successfully only because it was filed out of time. I'm not sure that last part is entirely true. Even where the government conceded that the institution of proceedings here was untimely. That's right. So 314, 315B should have. And that there's no review of that decision in this proceeding at all. That's right. But the reason that it doesn't mean that the director was precluded from reviewing the patentability of that determination is what my friend alluded to, that section 315B doesn't bar the director from revisiting an issued patent. They could have, the director could have taken the exact same materials that was submitted with a petition for inter partes review, decided that the review, inter partes review was time barred, but then instituted an ex parte reexamination. Sure. There are a million other things that could happen. But this is what happened. And we can't review it, right? I agree. Yes. And nobody will. And the patent has now been killed. And there is no way to review it on the basis of its timeliness. What was open for review was that patentability analysis. Now, Respondent opted not to challenge that patentability analysis. But if it had merit, that would be judicially reviewable. And then the patent wouldn't be canceled. So how about a situation where it's only discovered during the proceeding that's been instituted, that a privy of the petitioner was served with a complaint alleging infringement in that would bar this action if it had been known at the time it was instituted? Is that appealable? No, it's not. I think the board Why? Because 315B speaks only and exclusively to the determination whether to institute inter partes review. And so the No. It has It doesn't talk anything about whether to institute it. It speaks in a prohibitive sense. An inter partes review may not be instituted if the petition requesting the proceeding is filed more than one year. So it doesn't talk about the director's decision. It talks about barring the action. Well, with respect, Your Honor, it talks about barring the institution of the action. And it only I don't see the word institution. It may not be You're right. It may not be instituted. Okay. So it bars the and the only actor who is authorized by the statute to institute inter partes review is the director. And so I think it fits very closely with 314D that makes clear that the determination So if he learns during the proceeding, so this is not sort of a jurisdiction this is not an issue that he can determine based on the papers, necessarily. The board at that point does accept a motion to terminate inter partes review on the basis of newly discovered information. If the board finds that 315B should have barred institution of review, it can then vacate its institution decision. But importantly, what it does is vacate its institution decision. It does not issue a final written decision. And then that is a determination whether to institute inter partes review. And it's not reasonable. I think you have a strong argument under Quazzo, but what do you do with the language that Justice Ginsburg read from SAS, and how would you reconcile SAS with your position here? So I think as far as reconciling the decision itself, I agree with my colleague that it just wasn't at issue in that case. The limit on the board's authority in that case was 318A, the provision that dictates the contents of the final written decision. So I think 314D. But why would it not be at issue? Why couldn't you characterize the issue in SAS, whether it was proper to institute review of only some of the claims? To be sure, that's the way the government did characterize it. The Court rejected that understanding of what was at issue and said that 318A, a provision that speaks to the final written decision, had been violated in that State case. And it wasn't very hard for the Court then to conclude that 314D, which only discusses the determination whether to institute, wouldn't bar review of that. I want to directly address the sentence that has been discussed about. I do think that sentence is wrong. I think it's incomplete. I think it starts, it's important to note, the sentence actually says Quoso concluded that section 314D only precludes the 314A determination. Quoso concluded more than that. And I think if you look at the decision, you'll see that. I don't – but the reason that it's not a problem is that it just wasn't at issue in SAS. And nobody flagged that because the statute that was challenged, that was on which the Court's decision was based in SAS, was not either 314A or a closely related  But if you look at Quoso and look at SAS, everybody, I think several of us have the same problem. In Quoso, I mean, the object of this thing, those words, seem to be that, look, there is a patent office making a decision about this claimed patent. And the closer relationship between the appeal and the issue on which it's being appealed to this decision, the more clearly barred it is. But you could have a reason for throwing out the patent that is terribly important that has all kinds of implications, constitutional, a different unrelated statute, or maybe there's some others which perhaps none of us could actually think of, but we could characterize them generally. But then SAS doesn't say that's wrong. It's just nervous about the open language. And so it tries to take that and narrow it somewhat by focusing really on the heart of what that was about, which is this individualized decision, which we know is barred, and now we have a statute. And this statute, well, it's not exactly just about this decision, is it? But it's sort of close, isn't it? And so what do we do with this statute? Because this statute talks about the general problem of complaints that were dismissed without prejudice. And do they fall or don't they fall within those words, serving a complaint? And that is a general question. And it goes well beyond this, or well beyond it. I mean, I don't know. So I'm saying if you were me and you read it that way, what would you say? Let's look at this statute. Is it a statute closely related CUSO or is it a statute closely related under SAS? And SAS doesn't use the words closely related. But that's what I think it's driving at. So I do think that this is a closely related decision. As we've discussed, it only speaks to institution. And if you have a doubt. Breyer. Of course it only speaks to institution, but you could have a statute that said anyone who's 6'2 can't institute. That would only speak to institution, all right? That would be an important statute or an important decision. So the fact that it only speaks to institution isn't quite catching the point. The point is how general and important is it of and beyond this particular proceeding, this particular claim? So if what you're driving at is sort of what was happening, discussed in the first case this morning, the questions of law should be able to be reviewed. I just think unlike the provision in the first case, there's no basis to draw that distinction. So if you, at the end of the day, conclude it's just too difficult to figure out, as my respondent says, it's unworkable to figure out how close is close enough, then what I'd urge the court to do is apply the provision as it's written. If it's about the determination whether to institute inter-parties review, then it's not under this section. Well, how about under this section, yes. How about that? How about the fact that traditionally, executive branch agencies have considerable discretion in evaluating the merits of claims and deciding whether to proceed with enforcement actions. And traditionally, statutes of limitations or repose or deadlines that are clear and written in law tend to afford enforceable judicial rights to citizens. How about that? So as I mentioned before, this is not a statute of repose. This Petitioner could challenge in the courts. This Petitioner could join another IPR that was already proceeding. The director could institute review on the behalf of any other person. There are other proceedings. I accept that, okay? But there's always like State proceedings. We don't do double jeopardy between States and Federal law anymore. So there's always another proceeding available. There's always another way to skin the cat. But this is the exact same thing. Congress wrote in this cat, for this cat. And I guess I'm just wondering, again, with Justice Breyer, in terms of close, how close it is, isn't there always a traditional distinction there that we recognize in our law governing judicial review? This — maybe there is a tradition, I agree. And actually, the Respondent argues that his reading of 314D would do nothing at all, in fact, would just reinforce those provisions. But I don't think that's a plausible reading of the statute. And to address the under the section language, that language is used throughout the AIA, indeed throughout 314 itself. But under this chapter is used in the same provision. If we had under this chapter here, that would solve your problem. I don't think we need that. I mean, if you talk about — just look at the text before that. The determination whether to institute inter parties review. Nobody doubts that the 314A determination is part of that. But no one also doubts that there are other aspects that go into that determination. So, for example, if you were thinking about a decision, a court's decision, whether to grant a preliminary injunction, no one would reasonably say that the threshold merits determination on a P.I., that whether there's a likelihood of success, is the determination whether to grant a P.I., even if you say the determination whether to grant a P.I. under whatever authorization or statute you're providing. And that's what under the section does. It does it here and it does it everywhere else. All it says is the petition filed under 311, the response filed under 313, the final written decision filed under — or issued under 318A. That's what under the section does here. It does not — they don't use this language in a way that isn't used — it's not used anywhere else in the Act. And if you have any doubt about the scope of this provision, I would urge you to look at the former section 312. It's laid out in our appendix, but it's also block-quoted at page 8 of our reply. Respondent's reading of 314D is to exactly what 312C said, that the determination under subsection A is final and non-appealable. But if Congress wanted to do that, there's just no reason at all for it to have changed the language and to use a phrase that just doesn't sensibly describe only the threshold merits determination. So you really have a choice of giving, under this section, not a great deal of meaning that clarifies the authority, or you have a choice of giving a meaning that has nowhere else in the code and then renders 314D largely superfluous in its entirety. We don't think there's a — that the former would — the latter, rather, would respect Congress's choice. In this case, it's undoubted choice to preclude judicial rebuttal. Kennedy. Do you think it's ambiguous? I don't think it's ambiguous, no. I think if there was any ambiguity in this provision, it was the one that was addressed in Quozo, whether it only applies for interlocutory appeals or after final written decisions. The Court decided that question in Quozo. No one's asking to revisit it. I don't think — and no one took — it was taken as a given in Quozo that it would preclude 315B. Justice Alito, in his dissent, said as much, and I don't think the — at the end of the decision, he was going back on that. He just said, this is the problem, and I don't agree with the Court's decision. Kagan. But maybe one way to read Quozo, and I take this to be the point of Justice Breyer's question, is that it goes beyond 314, but that it only goes to questions that are closely related to the reasonable likelihood determination. So there, the particularity requirement was reasonably related — was related, closely related to that reasonable likelihood of patentability determination. But timing is — is less so. So I — I agree that's one way to read that one particular passage. I think if you look elsewhere in Quozo, you'll see that what the Court says, for example, on page 2141, is it's questions that are closely tied to the application and interpretation of statutes, plural, related to the Patent Office's decision to institute interparties review. So I don't think that's a plausible reading of what was going on in Quozo. And I would point out that it was 314a-3 that was at issue there, not 314a. Ginsburg. In Quozo, it was the particularity requirement, and that was described as a minor statutory technicality. But here, we're not dealing with a minor statutory technicality. We're dealing with a time bar. So does that expression in Quozo that it was a minor statutory technicality limit it so that a time bar is — is — could not be characterized that way? Briefly, Mr. Ellis? No, Your Honor, it does not. For one, 312a was a meaningful limit on the director's decision to even institute at all. So we think it is — since that's a minor technicality, this one fits into the same bucket. It doesn't actually preclude the director from reaching the final decision. And I take the point of that passage in Quozo to be that we shouldn't throw out the Board's final written decision on patentability, the major — the major question on a ground that's completely unrelated to that decision. 315b is exactly that. Thank you, counsel. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. I respectfully waive my two minutes, but would otherwise start by underscoring the truly extraordinary nature of the topside argument. As we've heard today, as my friends read this statute, Congress delegated the judicial function to an administrative agency, gave that agency the unfettered discretion to say what the law is, and then instructed that no Article III court at any time, at any level, may review the agency's interpretation of the statutory limits on its own power. Well, if you're going to waive your two minutes, I'm not going to sit back. The point's been made, and it's an important one, about the separation of powers. And I will repeat a question that has been asked this morning. But is that really implicated here when you're talking about a time bar on something that a party is going to get review of anyway? I mean, the question of patentability could be put at issue in any number of ways. And I wonder if those types of very significant concerns, concerns that it is importantly our job to be concerned, to be vigilant about, really do come into play when it's simply a question, do you go this route or can you go that route? And the fundamental question that's at issue about patentability is going to be reached. That's not being foreclosed. Well, the ultimate question isn't being foreclosed. That's true. But the 315B bar, this is not a minor statutory technicality. This is one of the substantive safeguards that Congress put into the Act in implementing this very new procedure that is adversarial in nature. And it understood that this is a significant protection for patent owners, and it's a significant way to divide the authority between the courts on the one hand and the agency on the other. So this isn't the type of provision that just is out there and it doesn't really have any effect in the real world. But I mean, I don't think it's what we were fighting over at Yorktown. I mean, it's just a question of whether, as you said, the ultimate question, the ultimate issue that affects the property rights in a patent, it's going to be reached. It's just a question of whether you use one procedure or another. Well, Congress viewed it otherwise, Your Honor. Congress definitely could have put in the inter partes review scheme something like it did in Section 303C, and so the director can institute sua sponte if it wants to. Instead, required a proper petition and it categorically cut off the agency's authority to act if the petition is filed after that one-year deadline in 315B. Well, it does, but you don't contest, right, that if this petition is thrown out, somebody else can bring another petition, right? Oh, hypothetically, they could, Your Honor, but you would need a hypothetical feature party raising a hypothetical feature petition. It hasn't happened yet. And there's nothing in the statute that says that. Well, but it wouldn't be rare to have such a party. Quite the opposite. It would be common to have another party who would pick it up. And what your solution would happen is that we go through the entire process, soup to nuts, and then we get to the end and somebody says, you know, the time bar wasn't applied correctly. We throw it all out and we start all over again on something that we know by now is an invalid patent. Well, we don't necessarily know that it is an invalid patent. Well, we know that the board held that it was an invalid patent. And it is reversed a quarter of the time. But I think the important point is that Congress did say that the agency cannot exercise its review power for interparties' review in those circumstances. And it may be true that there might be a feature party, but we don't know that yet. Congress could have excluded that. Well, Congress also said that there's no judicial review of the decision whether to institute. And presumably, Congress said that for exactly this reason, that once that decision is made and you go through the entire process and you get a merits determination, given that throwing it all out is just going to land you at square one doing the exact same thing, that it was a, you know, a little bit silly to go back to square one. Your Honor, I don't think that Congress thought that section 315B was insignificant. I think they wanted it to have teeth. And just to be absolutely clear, the petition that my friends are raising on the other side says that no court can construe what that language means. This is a provision that Congress used to calibrate important interests. Ginsburg. But if we're in doubt about it, we think it's ambiguous, doesn't the nullification of the determination that this patent is no good, that's out there, that's what the Board thinks, that this should not have been patented, and we wipe that out, then you get another challenger and, well, the Board has already made the decision that the patent is no good. There's something unseemly about nullifying the determination on the merits. I disagree, Your Honor, and for the reason that if the patent, in fact, is invalid, then it can be invalidated in a proper proceeding. And again, it's subject to judicial review on the merits, and so it's not entirely sure that that patent, in fact, is invalid. What we do know is that Congress did not want the proceeding to start if the Petitioner is filing it after the year deadline. Often what happens, and this is not just a question of wasted resources, although we would submit that construing this provision correctly will spare unauthorized future proceedings that will far make up any resources wasted in this individual case. Breyer. Well, what is the analogy that floats around in my mind on this is that judges and agencies start down a road and then they say, oh, my God, I made a mistake. And we give them lots of power in the law to call back what they did and correct the mistake. The obvious example last week was Rule 59. All right? Now, a judge, when faced with a 59 motion, says, my goodness, you're right, I made a mistake. And he changes it. Now, in fact, the party filed that 59 motion one day too late. Okay? Now, can there be an appeal to an appeals court that this mistake which was recognized by the judge shouldn't have been recognized because the Rule 59 motion was filed a day late? My guess is the Court of Appeals will not consider that kind of thing. You get one appeal from the ultimate thing. Now, this is highly analogous. You see, they're saying, oh, we think that we think that given all the other ways of filing, getting this in front of us, this issue of whether we made a mistake, it's not what Congress meant that we can't hear it when there is a complaint filed and the parties say throw it out without prejudice. That that shouldn't stop us from hearing it. They might be wrong about that. But that's like filing the 59 motion a day too late. And we shouldn't have review of that kind of thing. All it was was an effort to correct a mistake. What do you think? Well, this is what I think, Justice Breyer. I think that this is the construction of a Federal statute. So the question is not how do we apply a given rule with a given construction on a given day for a certain set of facts. This is what does an act of Congress mean. And again, this is the question. Well, that's true, of course, or could be true. In many matters governing instances where judges or agencies call back something they did because they think they did it wrong, would that make it somehow more reviewable? Well, I think what makes it reviewable is the strong presumption favoring judicial review. Again, it is exceedingly rare for Congress to enact a highly reticulated scheme that's restricting the agency's core authority for significant policy objectives. And that says, agency, you figure out what those provisions mean. No court can do that. Well, you're right, it is rare, and that's why we have this presumption, and we usually don't think that Congress wants it. But this language is pretty broad. It's the decision to institute is final and unappealable. And you're going to tell me it's in this section, and I'm going to tell you, I mean, in this section, it's just the decision to institute is in this section. But the decision to institute is final and unappealable. Well, a couple of key points, Your Honor. I am going to tell you that it says under this section, but I do think it says that for a very important reason. And under my friend's reading, that phrase, under this section, has absolutely no meaning. You can take it out of the statute, and it means exactly the same thing. In fact, you can replace the word section with the word chapter. These are two very different terms, and Congress knows the difference, because if you look to 314b, they use the phrase, institute under this chapter. Well, I don't want to interrupt the rest of your answer to Justice Kagan, but would it be possible for the director to institute inter partes review under some other section? Could the director say, I don't want to invoke 314, I want to institute inter partes review under some other provision of law? Can he do that? Well, this is and there's an oddity with this statute, Justice Alito, in that there is not an express provision anywhere in Chapter 31 that expressly authorizes the director to institute review. It's not in 314. The institution takes place implicitly under this chapter, which is why if you look through Chapter 31, you'll see repeated instances. And I think 314b, which is under this section, is a great illustration. It talks about institute and inter partes review under this chapter. It is not, as my friend from the government says, it's just describing where something happens. Kagan. Mr. Geiser, I think 314a does. I mean, it does it in a little bit of a backhand way, I understand that. But it says, it gives, 314a is what tells the director when he should institute. And so it's 314a that authorizes the director to institute, and then 314d says the decision to institute under this section, in other words, under 314a, is final and unappealable. I almost agree, but there's a very important predicate step, and that's in order to get to Section 314, you first have to clear the gateway prerequisites under 315, including 315b. And as my friend from the government concedes in the reply brief, this is on page 6 of the government's reply, they concede that if the prerequisite under 315b is not met, the director has nothing else to do, which means that the director doesn't make any determination under Section 314. And you're right that Section 314d is linking the determination under this section, whether to institute, to that determination under a, which is entitled to threshold consideration. It's looking on the merits. If you have an eligible petition, does it satisfy, does it satisfy, as the director determined, that the information presented shows that it's reasonably probable? Kagan. Kagan. But if you're right, Mr. Geyser, what does this unappealability bar really amount to? When does it bar anything that anybody would want to raise as an argument? Because if you're right, it's just limited to the substantive determination at the threshold stage. But by the time this is going to get to appeal, the substantive determination at the threshold stage has been subsumed by the substantive, the final substantive determination. So if you're right, you're basically saying, you know, there's this unappealability bar on appeals that applies only to something that nobody would raise. Your Honor, what I'm saying is exactly what Congress did in Section 303c. Well, you're saying that Congress wrote that silliest provision, that the bar on appeals applies only to something that nobody would raise, because it's been totally booted out. It's not silly, because Congress has a good reason to make absolutely clear that people will not interrupt the inter partes review while it's going on with a disruptive interlocutory appeal, and at the end of the day, they won't waste the Court's time with that preliminary initial threshold decision. But again, Congress is repeating the exact same pattern that it did in Section 303c and that it did in former Section 312c. This is one area that's very important. Alito, do you disagree with Justice Kagan that it does no work under your reading? No. It clarifies what the likely outcome is, and I think clarifying does give it significance. Does the clarifying do any work in the real world, which is what I took to be her question? This is all I can say is that we know that Congress thought it was doing work because everyone agrees that is all that Congress did in 303c and 312c. So I'm not making this up. If you look back and see what has Congress done in the past in this very area, it's done exactly how we're reading 314d. And this is an area, again, that I think all parties to this case agree. Everyone agrees that 303c and 312c, former Section 312c, accomplish only what Justice Kagan has pointed out. I think Mr. Ellis would say, well, that's true, but those provisions were specifically said exactly that. If you take a provision that's now written much more broadly and limit it to that set of applications, which is essentially nothing, I mean, isn't Congress's intent being flouted? I don't think at all, Your Honor. And first of all, the language is not markedly different. And I think one would expect that if you're going to expand an appeal bar, which, again, we're in very rarefied territory, as we heard both earlier today and at the top side of the argument, of cutting off the Court's ability to say what a provision of the United States Code means. No court at any time will have the power to read this and say what it means. So that's why it's not an issue. And then, I mean, if you give any real-world example of when the bar would do work. The bar would do work if a party came at, let's say, a petition says, I think that this patent is invalid, as obvious in light of a certain prior art reference A, and then the agency says, you know what, we agree. We're going to institute review. And then in the course of review, they say, oh, my goodness, we were entirely wrong. That argument was actually frivolous. But you know what, there's actually a different argument that would invalidate the patent at the end of the day. Then I could see a party saying, well, wait a minute, that institution was improper under A, because they're conceding that, in fact, the petition should not have been  It wasn't. Kagan. Kagan. So you think that Congress wanted, in a case like that where the Patent Board has found a good reason why the patent is invalid, to go back and do the entire thing over again because its initial theory was not the one that it ended up with? What I think, Your Honor, is that Congress was not focused in a single-minded way on a single objective when they wrote the statute. These provisions were heavily negotiated. And I think if you see the meekie on our side, you can see why they thought that the 315 bar is a fundamental safeguard to protect patent owners from both harassment and abuse. It avoids a situation where someone litigates in district court, they test the waters, it turns out they don't like how it's going, and they try to uproot the proceeding to the agency after the fact. This is very important substantive protections for a patent owner whose property rights are subject to review in an Article I tribunal. And my friends have even conceded that that tribunal is truncated. It is not providing an equivalent process that you would get in a normal Article III proceeding. So I think Congress didn't look at this as some minor statutory technicality. Well, it doesn't have to be characterized as minor just because it's not judicially reviewable. We presume that the executive officials are going to follow the law set forth by Congress whether or not there's judicial review. We do presume that, but we also presume that they're more likely to follow the law correctly when someone knows they're checking their work. That's true in practice. I grant you that. But it's not that it does no work without judicial review. I'm just pushing a little bit on that point. Your Honor, I fully agree that we have every belief that the agency will exercise the utmost good faith in adjudicating cases under this scheme. But what we do know from mock mining and from other cases of this court that But that's a way, sorry to interrupt, but that's a way to make the whole thing do some work. Under the theory that it's an important provision, 315, it does work in telling the agency don't do this. There may not be judicial review, but don't do this. The agency's presumably going to listen to that. Then the appeal bar, though, also does some work under this in that it knocks out claims. It says certain kinds of claims are not appealable at the end, even if they happen in the rare instance or maybe not so rare to violate that bar. So both provisions do substantial work, then. What's wrong with that, looking at it that way? Well, I think what's wrong with it, again, is you're removing any ordinary, traditional, normal function of judicial review to ensure that the agency is constructing the outer limit on its own power correctly. And, again, that's not a small thing. But, you know, you cited mock mining. But mock mining was very clear to say, again, we usually think that Congress wants the court to police a congressional statute. But sometimes Congress wants the agency to self-police because it doesn't think that the costs of judicial review, and there are some, are worth it, given the subject matter, given the fact that, in this case, there's going to be review of the principal question anyway. And, you know, in the end, this is not unconstitutional if Congress wants to say that the decision to institute is not reviewable, and Congress appears to have said that. Well, they appear to say it with respect to something, but the question is as to what. And, again, I think it's highly unusual that Congress put this no appeal bar in Section 314, said it applies to a determination under this section, and there's a ready candidate for what Congress had in mind, and then it's the only section that deals with institution of inter-parties review. Any institution of inter-parties review would be under this section, because there is no other section that deals with institution of inter-parties review. Well, again, Your Honor, though, in order to even get to Section 314, you first have to clear the gateway prerequisites elsewhere in this chapter, including Section 315. And, again, we're simply reading 314d to say exactly what this Court in SAS said it meant, which is it is limited to only the initial patentability threshold in 314a. Now, my friend from the government now concedes that they think that was wrong. I don't believe they've asked this Court to overturn SAS. We don't think that the Court was wrong. Kagan. Kagan. Kagan. It's just I think what they were saying is that SAS dealt with one issue in which it was unnecessary to recite Quozo's full test, but Quozo has a broader test than SAS quoted. Well, to be very clear, I think that we went under Quozo as well, but I don't think that the reasoning in that statement, which is a very plain statement in SAS, can be limited in that way. SAS was addressing the government's argument that 314d precluded any issue bearing on the institution decision. That is taking on exactly the same contention that they're raising in this case. Their contention ultimately is that this Court might have adopted a different rationale and ruled more narrowly in order to reject that argument, but that is an absolute part of the core holding of the case in rejecting what the government eventually framed as their primary submission in SAS. But I also want to be clear about how to reconcile SAS with Quozo, because I think SAS has already given us the pathway on how to do that. Quozo was absolutely clear that if you have a fundamental challenge to the 314a determination, but it is using the tools of other provisions of the Act that are designed to get information to the director to make that determination, then that's what's barred. And I think it's clear that when Quozo said it precludes the initial patentability determination and any other statute that's challenging that determination, it specifically used the phrase that determination, that patentability question. That's what's knocked out. And because the – that's because the ultimate challenge is to 314a. And that makes good sense, because no party in their right mind would say, I have no problem at all with the reasonable patentability determination. The threshold was met. What I'm really upset about is the way that the petition was written. That's a claim that will fail every single time. There's no conceivable prejudice to that. But that is the opposite of what happens if someone is violating a strict statutory time bar that, again, is phrased very differently than the phrasing that you see under Section 314. 315b is phrased as an outright ban on the authority of the agency to institute. It says an enterprise review may not be instituted if those conditions are met. When you look to 314, it's asking what does the director think. This is something that the director has the power to determine. Now, that's something that the director can do if the gateway prerequisite under 315b has been satisfied. If it hasn't, then the director has no power to proceed, which, again, we agree with the government on this narrow point. On page 6 of their reply, they say plainly that if that prerequisite is not met, the director has nothing else to do. And at that point, the only determination made by the director is not happening under 314. Sotomayor, I do have some sympathy for your argument that a Petitioner should be given an avenue of judicial review on a legal question, like the timeliness of the application. But some amici point out a potential problem, under your view, which is if the PTO agrees with you on the legal question and throws this complaint out, that the other side won't have an opportunity to challenge that, because the only power to appeal is under 319, and 319 requires a full hearing for appealability. So what do we really one way or another, we're going to preclude judicial review, the argument goes, of a legal question. Let me see if I can give you some comfort on that. There are always two questions that come up in these cases. The first is, is there a provision that affirmatively authorizes judicial review? And the second is, is there a provision that affirmatively precludes judicial review? So we're talking about 314d. Now, our contention is that, let's say the Patent Office misreads 315b to say it doesn't have authority when it in fact does. It reads 1 year to mean 6 months, so it's cutting off lots of time in the Petition. Sotomayor, just this case. It reads it this way, and the other side says you're wrong. For all the reasons it earlier gave. So our contention, again, is that 314d would not preclude review. The question is, what is the affirmative power to review? Now, it won't come under 319. You're right. There's no final written decision. But that doesn't take away the potential to raise this under the APA, which provides judicial review for decisions where there's no other adequate means of doing it. It potentially could get review under mandamus, depending on the egregiousness of the decision. And there is a provision in Title 28. It's 1295a4a that gives the Federal Circuit jurisdiction over a decision of the patent of the PTAB in the inter partes review setting. So there are lots of different ways that someone who feels aggrieved by a misreading that cuts off power that otherwise exists. And I don't think that would also fall within the exception, just to make sure I'm rounding out the answer, for decisions that are committed to agency discretion. Because if the determination is we lack the authority to do something because they've misread one of the outer limits on their power, as opposed to we're declining to review for reasons of agency resources or we just don't think this is important enough to spend our time on, that's a different type of question. So I think that the amici on the other side are wrong in that respect. Breyer. So what's so terrible about reading the --"in this section," to mean what it says, which is that where the director, where the director, what is the exact word, where the director decides to institute an inter partes review under this section, that's it, you can't appeal that decision. That's the norm. And after all, the director could do this on his own, couldn't he? The director could institute an ex parte reexamination. So this, then, is basically a way, a little complicated way, but of the agency saying, oh, my God, we made a mistake. And what that section has is about D, subsection D, is don't review the decision, oh, my God, I made a mistake.  You review whether the patent should have been canceled or not canceled. But it's up to the director, really, whether he decides to look at it once, twice or three times. Indeed, how do we know the director didn't look at it ten times before he ever decided to grant it? That's a simple way of looking at it. And that leads you to pretty broad language about what's a pretty broad category of what you can't review. Well, again, I don't think it is so broad. And I do want to make one thing very clear. The ex parte reexamination under 303 does not proceed the same way that an inter partes reexam or inter partes review does. It mimics the initial examination process. It gives a patent owner vastly greater rights. They get to interact with the office. They have additional amendment rights. So the process looks absolutely nothing like inter partes review. It's not just that they can say, you know what, we made a mistake. We'll just switch, we'll scratch off inter partes review and rewrite ex parte reexamination. It doesn't work that way at all. And it's. Well, it's different, I'll give you that. But I mean, it's focused on the same ultimate question. Well, sure, Your Honor. But Congress decided in granting this new procedure that has a potent, you know, a potent danger to patent rights, that the patent owners are entitled to significant safeguard. And the main safeguard that they implemented are the ones in 315. So I guess the question, though, that we're struggling with is, so what's the big deal? If you're stuck going to ex parte review anyway, why should we care? What's your answer to that? Well, I think you should care, because inter partes review is a very different process than ex parte reexamination. And again, if Congress felt. But somebody else can. Spell that out. Spell that out. Why? It's because instead of having an opportunity for a single response, truncated discovery, you're in an adversarial proceeding, you're before a panel of three PTAB judges who might give you an hour oral hearing, you get a long iterative process with a talented patent examiner who can say, this is what I think is wrong, and then you have lots of opportunities to show them exactly why that concern is unfounded. And again, the PTAB is reversed a fourth of the time. It's not like this process, because it's so truncated, I'm assuming, is perfect or without errors. I hope it matters.  And if it's this Petitioner, it can be another Petitioner. And indeed, even when a Petitioner drops out under this statute, the board can keep the proceeding going without the Petitioner. So the fact that it's this Petitioner seems utterly unimportant under this statute. Not at all, Your Honor. And I think the key is that if Congress thought that the board can do whatever it wants, it would have mimicked the same language it had in 303, saying they have a sua sponte right to institute review. This is a procedure that is keyed directly on there being a proper, timely petition. You don't deny that another Petitioner can just step into the shoes of this Petitioner? If they file a timely petition, they can seek review. I absolutely can see that. And you don't deny that if a Petitioner drops out for any reason, the board can go on without any Petitioner? Assuming that it was a properly filed petition in the first place. We don't disagree with that. It just doesn't seem as though this Petitioner makes all that much difference. Well, Congress felt otherwise in this heavily negotiated process that produced 315B as a fundamental safeguard for patent. But again, why would it have made that judgment, I guess, is the question. Why does it matter whether it's one Petitioner or another Petitioner? Well, because Congress felt that it was important in this adversarial scheme. Why? To make sure that you don't have someone gaming the system, waiting out over a year or even in this case 10 years before they seek review, where you don't have a repeated inter partes review petitions filed by multiple people trying to hold up the patent and prevent a legitimate litigation in an Article III court seeking recourse for infringement. There are lots of reasons that Congress would have had in mind. But typically the way the system works is Congress passes a law, the agency gets to enforce it, but this Court ultimately gets to say what those provisions mean. Congress thought this was an important provision. Congress could have said, you know what, it doesn't really matter if it's timely or not, do your best, agency, and then we'll move on. But they limited this, located it in a specific section, keying it to a specific determination, as this Court has already recognized in SAS. And it said that only that determination, the one under this section, not under this chapter, is a thing cut off from appellate review. So I don't think it's enough simply to throw up our hands and say maybe someone else could come along. Maybe they can, but maybe they won't. And even if they do, they still need to mount a challenge that the director is willing to accept. So and I would like to say one other point about the statutory history. Again, I do think that this is actually a point in our favor, not my friend's. It shows exactly Congress following the same pattern and cutting off a similar type of appellate review. It's very narrow. And I think that it would be extraordinary to presume that Congress expanded that in such an oblique, indirect way as they did here. When Congress wants to cut off appellate review and say that the usual Article III function is delegated exclusively to an agency, where no court at any time gets to look through any of these provisions that Congress took care to articulate to limit the agency's power, Congress presumably writes in a clear and unmistakable way. I would submit that I'm not aware of any case that this Court has ever decided that – may I finish? That would find Article III review cut off entirely based on language as indirect as this. Roberts. Thank you, counsel. Three minutes, Mr. Charnas. Thank you. I'd like to make four points. First, with respect to the language under the section in 314d, other provisions of Chapter 31 make perfectly clear that Congress viewed the institution decision under 314. For example, 315c says – refers to, quote, the institution of an IPR under section 314. There's similar language in 316a2. So we believe that's all Congress meant by that – those three words, is that institution occurs under 314. The title of 314 is institution of interparties review, and there's no other provision of the statute that could plausibly involve institution. The second point, my friend referred to several times the section 303 and former section 312 and suggested that they're analogous to what Congress did here in 314, but that's simply not true. If you look at former section 312c, what it says is, quote, a determination by the director under subsection A shall be final and non-appealable. If Congress meant to limit the preclusion of judicial review to the preliminary patentability determination in subsection A of section 314, there's no reason it would not have used the language that was already in the statute that it was replacing when it drafted the America Invents Act. And it did not do that. It specifically changed the language, and that change has to have some – some meaning. Third, my friend also mentioned when asked, I believe, what work section 314d did, said that, well, you know, it bans interlocutory review. Well, that rationale was specifically rejected by this Court in Quozo, where it said it was not limited to simply prohibiting interlocutory review. In fact, it would have been superfluous if that was the purpose of the statute, of the provision. And fourth, going to your question, Justice Sotomayor, we disagree that there's not an – we think there is an asymmetry here if respondent is correct. This Court in Quozo said clearly that denial of an IPR petition is committed to the agency's discretion, and that means it's unreviewable. And that's how the Federal Circuit in several decisions has interpreted it. In the Wi-Fi One case, which is the en banc case that was applied below, the Court said that a denial cannot be reviewed. And in the St. – more recently in the St. Regis Mohawk case, it said the same thing. So I think you've got an asymmetry here, which is that legal determinations made by the Board in the course of granting review, if respondent is right, can be reviewed after final written decision on appeal. But if the Board denies review on the basis of a legal determination, that will never be reviewed. So here, for example, if the Board came to the opposite conclusion, it would not be reviewable. Roberts. Thank you, counsel. The case is submitted.